**2009 BNH 028**

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

James F. Watson, Jr.,                                       Bk. No. 07-11811-JMD
          Debtor                                Chapter 13

Jonathan M. Jewett and                                 Bk. No. 08-10149-JMD
Janet P. Jewett,                                             Chapter 13
          Debtors

Diana Philibert,                                             Bk. No. 08-11307-JMD
          Debtor                                Chapter 13

*Mark P. Cornell, Esq.*
*Cornell and Ovitt Puc, PLLC*
*Concord, New Hampshire*
*Attorney for Debtors James F. Watson, Jr. and Diana Philibert*

*Brian F. McCaffrey, Esq.*
*MaCaffrey Professional Association*
*Exeter, New Hampshire*
*Attorney for Debtors Jonathan M. and Janet P. Jewett*

*Lawrence P. Sumski, Esq.*
*Manchester, New Hampshire*
*Chapter 13 Trustee*

## MEMORANDUM OPINION

## I.  INTRODUCTION

      Lawrence P. Sumski, the chapter 13 trustee (the "Trustee"), filed three separate motions

seeking to modify the confirmed chapter 13 plans of James F. Watson, Jr. ("Watson"), Jonathan

M. and Janet P. Jewett (the "Jewetts"), and Diana Philibert ("Philibert") (collectively, the

"Debtors") on the grounds that the Debtors received large income tax refunds in 2009 for the

2008 tax year, which represent an increase in the Debtors' disposable income that should be contributed to their chapter 13 plans in accordance with the Court's recent decision in In re Michaud, 399 B.R. 365 (Bankr. D.N.H. 2008). The Debtors objected to the Trustee's motions. The Court held a hearing on the motions on October 6, 2009, and took them under advisement. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

### A. Watson

Watson filed bankruptcy on August 24, 2007. Form B22C reveals that he is an "above median" debtor[1] who has no disposable income as calculated under 11 U.S.C. § 1325(b)(2) but $103.41 in disposable income as shown on Schedule J. Watson's chapter 13 plan requires him to make thirty-six monthly payments of $105.00, for total plan payments of $3,780.00. His plan does not include any requirement to turn over tax refunds for distribution to creditors. The Court confirmed Watson's plan on November 2, 2007, and entered an order allowing claims on May 14, 2008, which estimates Watson's unsecured creditors, who are owed $18,314.00, would receive a dividend of 8%.

---

[1] An "above median" debtor is a debtor whose family's income is above the median income for a family of the debtor's size in New Hampshire. The term "median family income" is defined in 11 U.S.C. § 101(39A).

### B.  Jewett

The Jewetts filed bankruptcy on January 23, 2008.  They are also "above median" debtors with $145.13 in disposable income as calculated on Form B22C and $125.24 in disposable income according to Schedule J.  The Jewetts' chapter 13 plan provides for sixty monthly payments of $179.77, for total plan payments of $10,786.20.  Like Watson's plan, the Jewetts' plan does not include any requirement to turn over tax refunds for distribution to creditors.  The Court confirmed the Jewetts' plan on May 23, 2008, and entered an order allowing claims on September 9, 2008, estimating the Jewetts' unsecured creditors, who are owed $51,041.00, will receive a dividend of 3%.

### C.  Philibert

Philibert filed bankruptcy on May 13, 2008.  Philibert is an "above median" debtor whose Form B22C shows no disposable income while Schedule J shows $865.11 in disposable income.  Philibert's chapter 13 plan provides for sixty monthly payments of $200.00, for total plan payments of $12,000.00.  Philibert's plan also does not include any requirement to turn over tax refunds.  The Court confirmed Philibert's plan on October 15, 2008, and entered an order allowing claims on January 16, 2009, which estimates Philibert's unsecured creditors, who are owed $42,910.00, will receive a dividend of 7%.

### D.  **Michaud** **Opinion**

In December 2008, after confirmation of the Debtors' chapter 13 plans, the Court issued a decision in three unrelated cases that concluded that chapter 13 debtors in this district must contribute their income tax refunds to fund their plans if they do not propose a plan that will pay unsecured creditors a 100% dividend.  Michaud, 399 B.R. at 370, 372.  The Court held income tax refunds constitute "income" within the meaning of 11 U.S.C. § 1325(b) and, in general, must

3

be devoted to a chapter 13 plan.  Id. at 372.  The Court explained that while it may be appropriate for chapter 13 debtors to retain some portion of an income tax refund in order to provide debtors with some cushion against unanticipated expenses that arise in the course of everyday life and to provide some flexibility as they attempt to create a budget for the duration of a three-to-five year plan, the retained refund amount depends upon the particular circumstances in a particular case and involves various considerations.  Id. at 372-73.  The Court further stated that in order to avoid annual post-confirmation modifications of chapter 13 plans, upon the filing of a tax return reflecting a refund, debtors in this district are required to submit any excess tax refund, as determined by the confirmed plan, to the Trustee no later than fourteen days after receipt of such refunds as part of the funding of the debtor's plan.  Id. at 373.

### E.  Motions to Modify

The Trustee filed motions under 11 U.S.C. § 1329 seeking to modify the Debtors' confirmed plans to provide for turnover of their 2008 income tax refunds for distribution to unsecured creditors in accordance with the Michaud decision.  According to the Trustee, Watson's tax refund totaled $3,780.00 and, if it were turned over for distribution to unsecured creditors, their dividend would increase from 8% to approximately 26%.  The Jewetts' tax refund totaled $7,240.00 and, if it were turned over for distribution to unsecured creditors, their dividend would increase from 3% to approximately 15%.  Philibert's tax refund totaled $6,434.00 and, if it were turned over for distribution to unsecured creditors, their dividend would increase from 7% to approximately 20%.

4

## III.  DISCUSSION

Section 1329(a) of the Bankruptcy Code provides in relevant part that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan . . . ."  11 U.S.C. § 1329(a).  Section 1329(b) provides that any such post-confirmation modification shall comply with 11 U.S.C. §§ 1322(a), 1322(b), 1323(c) and 1325(a).  11 U.S.C. § 1329(b)(1).  "Modification [of a confirmed chapter 13 plan] is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly."  Meza v. Truman (In re Meza), 467 F.3d 874, 877 (5th Cir. 2006).

The First Circuit Court of Appeals has indicated that § 1329 does not, in itself, establish a criterion for granting a modification, other than the plan, as modified, must comply with applicable provisions of the Bankruptcy Code.  Barbosa v. Soloman, 235 F.3d 31, 38 (1st Cir. 2000).  In Barbosa the court declined to adopt the "substantial and unanticipated test" for seeking modification of a confirmed plan that is applied by some courts.  Id. at 41; see also Meza, 467 F.3d at 877-78 (also declining to adopt the test and citing cases supporting use of  the test); In re Witkowski, 16 F.3d 739, 748 (7th Cir. 1994) ("Section 1329 does not require any threshold requirement for a creditor, debtor or trustee to seek modification of an approved bankruptcy plan.").  Under the test, a plan may not be modified unless there exists a substantial and unanticipated change in a debtor's financial circumstances from the time of confirmation.  See Barbosa, 235 F.3d at 38-39.  The Barbosa court found favor with the bankruptcy court's view that "parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in §

5

1329[(a)]."[2]  Id. at 41.  The court further explained that the 1984 amendments to the Bankruptcy

Code gave trustees and unsecured creditors standing to seek modification of confirmed plans "in

order to carry the ability-to-pay standard forward in time, allowing upward or downward

adjustment of plan payments in response to changes in the debtor's financial circumstances

which affect his/her ability to make payments."  Barbosa, 235 F.3d at 40 (citing Oversight

Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial

Law of the Committee on the Judiciary, House of Representatives, 97th Cong., 1st and 2nd Sess.

22-23 (1981-1982)).

        In the instant cases, the Trustee seeks to modify the Debtors' confirmed plans, as

permitted by § 1329(a)(1), to require the Debtors to contribute their 2008 income tax refunds in

order to increase the amount of payments and thus the dividend to the Debtors' unsecured

creditors.  The Debtors object to the proposed modifications on the grounds that (1) the Trustee

is barred from raising a disposable income issue at this time as it could have been raised at the

time of confirmation; (2) the modification of the plan to request the turnover of the 2008 tax

refunds would be retroactive and therefore is impermissible; and (3) the facts of the Debtors'

particular cases do not support modification of their individual plans.

        **A.  Res Judicata**

        The Debtors argue that the Trustee may not seek turnover of their tax refunds for

distribution to unsecured creditors as this is a disposable income issue that could have been

raised by the Trustee at the time of confirmation but was not.  For that reason, they contend res

---

        [2]  Since 2005, when the Bankruptcy Code was amended to add § 1329(a)(4), there has been a
fourth circumstance for modification, i.e., a reduction in plan payments so that a debtor may purchase
health insurance for the debtor and the debtor's dependents subject to certain conditions.  See 8 Lawrence
P. King, Collier on Bankruptcy ¶ 1329.01, at 1329-3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.
2009).

judicata bars their turnover.  The Trustee argues that at the time debtors file bankruptcy they typically exempt the current year's tax refund preventing him from arguing that the refund should be included as disposable income at the time of confirmation.  He further contends that the tax refund that arose post-confirmation in each of the Debtors' cases is "new money," which did not exist at the time the plans were confirmed, and thus he should be permitted to collect it now by filing a modification motion.

In Barbosa, the First Circuit Court of Appeals held that res judicata is not a bar to post-confirmation modification of a plan as "the statutory framework is clear in allowing post-confirmation modifications, a feature that is incongruent with the application of the doctrine of res judicata."  Barbosa, 235 F.3d at 40; see also Witkowski, 16 F.3d at 745 (holding the common law doctrine of res judicata does not prohibit modifications that otherwise would be permissible under § 1329).  Thus, the fact that the Trustee did not raise any issue at the time of confirmation regarding the receipt of postpetition tax refunds does not bar him from seeking their turnover post-confirmation through a modification motion.  See Washington v. Countryman, 390 B.R. 843, 846 (E.D. Tex. 2007) ("The fact that the issue of income taxes was not litigated at the time of confirmation is of no import.  Indeed, this is the very purpose of Section 1329. . . .  The burden is not . . . on the Trustee, the creditors, or the bankruptcy court to divine that debtors will be receiving a substantial income tax re[fund] merely by virtue of the fact that the debtors project their disposable income when the original plan is confirmed, as required by 11 U.S.C. § 1325.").  Section 1329 allows the Trustee to do exactly what he did in this situation–seek to increase the amount of payments on claims of a particular class, e.g., the general unsecured creditors.  See Witkowski, 16 F.3d at 742.

### B.  Retroactive Modification

The Debtors also argue that any modification of their plans to require the turnover of their 2008 tax refunds would be retroactive in effect and therefore impermissible.  The Debtors contend that they have complied with the terms of their confirmed plans, which contain no provision for the turnover of refunds, and they argue it is fundamentally unfair to attempt to capture those refunds now, months after the refunds were presumably paid to and spent by the Debtors.

The issuance of an income tax refund to a debtor who is making payments under a plan is "clear grounds to seek modification" under § 1329.  Washington, 390 B.R. at 847.  However, modification of a chapter 13 plan under § 1329 is discretionary with the Court.  Witkowski, 16 F.3d at 746; In re Hill, 386 B.R. 670, 673 (Bankr. S.D. Ohio 2008).  The Debtors' chapter 13 plans were all confirmed months before the Court issued its opinion in Michaud in December 2008.[3]  Based on the terms of their plans, the Debtors had no reason to believe they would be required to turn over their 2008 income tax refunds to the Trustee.  The Trustee did not file his modification motions until September 2009, months after the deadline for filing the Debtors' 2008 income tax returns passed and presumably months after the Debtors received their refunds.  Thus, this is not a situation where the Debtors were put on notice before their receipt of the refunds that they would be required to turn them over to the Trustee.[4]  For that reason, the Court

---

[3]  Watson's plan was confirmed on November 2, 2007, the Jewetts' plan was confirmed on May 23, 2008, and Philibert's plan was confirmed on October 15, 2008.

[4]  The Court notes that this may not be entirely true as 11 U.S.C. § 521(f)(1) expressly allows the Trustee, or any party in interest, to request and obtain copies of debtors' postpetition tax returns.  See also Administrative Order 4002-7.  It seems obvious that there is no reason to provide the returns to the Trustee if the Trustee lacks authority to seek a post-confirmation increase in plan payments based on the information contained in those tax returns.  In re Self, No. 06-40228, 2009 WL 2969489, at *5 (Bankr. D. Kan. Sept. 11, 2009).  The record contains no evidence as to whether these particular debtors were aware of the possibility of post-confirmation modifications of their plans to recover tax refunds.

finds that the Debtors lacked sufficient notice, and, without such notice, it would be fundamentally unfair to require them to turn the 2008 refunds over at this point. See In re Self, No. 06-40228, 2009 WL 2969489, at *11 (Bankr. D. Kan. Sept. 11, 2009) (concluding that the trustee's proposed modification could only be made prospectively). In at least one case, the Debtors indicate that they spent their tax refund; the Jewetts used it to cover expenses incurred during an unpaid maternity leave. Accordingly, under the facts of these cases, the Court will exercise its discretion to disapprove the proposed modifications. See Witkowski, 16 F.3d at 746 ("[A]ll proposed modifications need not be approved and in practice not all modifications are approved.").

### C. Future Modification

The Trustee's motions only seek the turnover of the Debtors' 2008 tax refunds. However, at the hearing, based on questioning from the Court, the Trustee indicated that he is also seeking to modify the Debtors' confirmed plans to capture future tax refunds in order to provide additional funds for distribution to unsecured creditors, thus increasing their dividend. In other words, the Trustee wants to modify the Debtors' confirmed plans in order to add a "Michaud provision" to them as is the practice now in all cases in this district with unconfirmed chapter 13 plans. The Court finds the inclusion of a Michaud provision in confirmed chapter 13 plans in this district appropriate for the reasons set forth in that opinion, i.e., tax refunds constitute additional income that generally must be devoted to a chapter 13 plan.[5] Michaud, 399 B.R. at 372. Accordingly, the Trustee may file new or amended motions to modify the Debtors' confirmed chapter 13 plans to require the turnover of all future income tax refunds for

---

[5] Thus, all motions to modify confirmed plans should also contain a provision requiring the turnover of future tax refunds. Failure to include such a provision in a modified plan is grounds for objection by the Trustee.

distribution to creditors in these cases, and in other confirmed chapter 13 cases in this district, as appropriate.  Such motions may permit the Debtors to retain a portion of future tax refunds as appropriate under the particular circumstances of their cases as contemplated by <u>Michaud</u>.  <u>Id.</u> at 372-73.  Motions to modify confirmed chapter 13 plans shall be filed and noticed for hearing consistent with the provisions of Local Bankruptcy Rule 3015-4(d).

## IV.  CONCLUSION

For the reasons set forth above, the Court shall issue orders consistent with this opinion denying the motions without prejudice to the Trustee filing new or amended motions to modify the Debtors' confirmed plans.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   October 26, 2009                    /s/ J. Michael Deasy
                                            J. Michael Deasy
                                            Bankruptcy Judge